UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERTO CONCEPTION[1],

                Petitioner,                        **No. 07-CV-0214(VEB)**

-vs-                                                     **DECISION AND ORDER**

WILLIAM D. BROWN,

                Respondent.
_____

## I.    Introduction

By means of a petition for a writ of habeas corpus brought under 28 U.S.C. § 2254, *pro se* litigant Roberto Concepcion ("Petitioner" or "Concepcion") challenges the constitutionality of Respondent's custody over him. Concepcion is currently serving a 25-year-to-life sentence pursuant to a judgment of conviction entered against him on May 1, 1995, following a jury trial in Monroe County Court on one count of second degree (intentional) murder.

Michael Nelson ("Nelson" or "the victim") was fatally shot in the head at about 1:00 a.m. on July 29, 1993, while he was standing outside a mini-mart at the corner of Seventh and Bay Streets in the City of Rochester. The two bullets recovered from Nelson's body were found to have come from the same nine-millimeter gun; however, the murder weapon never was recovered. At the time of the shooting, no arrests were made.

Months after the murder, Robert Black ("Black"), a convicted drug dealer serving a six to twelve-year term of imprisonment, informed the City of Rochester Police Department that a person named Tirado had killed Nelson at the behest of Roberto Concepcion ("Concepcion").

---

[1] Mr. Concepcion's name was misspelled on the form habeas petition (Docket No. 1) as "Conception."

-1-

Since Black already was serving a prison term, the prosecutor informed him that there was not much that could be done in exchange for his cooperation. Black was told that, if he cooperated, the prosecutor would inform the parole board of this fact. The prosecutor also promised Black that if Black filed a collateral application to have his sentence modified, the motion court would be informed of the cooperation he provided. Finally, Black and his sister, Ranisha Mackey ("Mackey"), who also testified for the prosecution, received $800 from the $5,000-award posted by Nelson's father through "CrimeStoppers." Defense counsel was made aware of these facts during the pre-trial phase of the proceeding.

Tirado's and Concepcion's severance motions were denied, and Concepion and Tirado were tried jointly in Monroe County Court (Connell, J.). Their first trial ended in a mistrial as a result of juror misconduct. Their second trial commenced on February 7, 1995, before Judge Connell, and resulted in their both being convicted of second degree (intentional) murder in connection with Nelson's death.

Concepcion's direct appeal, motions to vacate the judgment, and application for a writ of error *coram nobis* were unsuccessful. Concepcion, as discussed further below, filed his first federal habeas petition in 2000, but requested in 2001 that it be dismissed without prejudice. This request was granted, and Concepcion was warned that any subsequent petition might be untimely because the statute of limitations had continued to run during the pendency of the first petition.

When Concepcion filed the instant petition in 2007, Respondent asserted that the petition was untimely and that Petitioner was not entitled to equitable tolling of the statute of limitations, that several of Petitioner's habeas claims were unexhausted and that, in any event, none of the claims in the petition had merit.

Petitioner submitted several reply briefs in response to Respondent's opposition papers; however, Petitioner did not directly addressed the issue of timeliness. Petitioner has also filed a motion to have his petition stayed and held in abeyance, as well as a motion for discovery and an evidentiary hearing. Respondent has opposed these requests.

The parties consented to final disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

For the reasons that follow, Concepcion's petition is dismissed as untimely. Concepcion's motion for a stay-and-abeyance and motion for discovery and an evidentiary hearing are accordingly denied as moot.

## II. Discussion

### A. Section 2244(d)(1)'s Statute of Limitations

With limited exceptions, a prisoner seeking a writ of habeas corpus must submit his petition no more than one year after the judgment against him becomes final. Title 28 U.S.C., Section 2244(d) provides in relevant part as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

> recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

For the purpose of deciding whether the petition is timely, the Court must determine when the one-year period began running. Neither subsection (B) nor subsection (C) of Section 2244(d)(1) apply under the facts of this case. The pertinent start dates in Concepcion's case could be either when the "judgment became final by the conclusion of direct review or the expiration of time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), or–construing his allegations in the most favorable manner–"the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence[,]" 28 U.S.C. § 2244(d)(1)(D), because Concepcion claims "newly discovered evidence" of his innocence.

### 1. The Petition is Untimely Under Section 2244(d)(1)(A)

"[A] judgment of conviction becomes final when the time expires for filing a petition for *certiorari* contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 525 (2003); *see also* SUP. CT. R. 13(1) (setting 90-day limit for filing of petition of writ of *certiorari*). The Appellate Division, Fourth Department, unanimously affirmed Concepcion's conviction on June 18, 1999, and the New York Court of Appeals denied leave to appeal on November 30, 1999. Concepcion did not file a petition for *certiorari* with the Supreme Court. His 90-day time period for doing so expired on February 28, 2000, and that is the date his conviction became final. Thus, as Respondent points out, Concepcion had until February 28,

2001 (one year from the date his conviction became final) in which to file his habeas petition.

After the New York Court of Appeals had denied leave, Concepcion filed his first federal habeas petition in the Western District of New York on December 5, 2000, under civil case number 00-CV-1014(WMS). However, Concepcion notified the Court that he wished to voluntarily withdraw that action, and Respondent indicated no opposition to such withdrawal. Accordingly, an order was entered to that effect on May 18, 2001, dismissing the case without prejudice and closing the file. In the Order, Concepcion was "cautioned . . . that the one-year limitations period set forth in 28 U.S.C. 2244(d)(i) continues to be applicable and that failure to re-file his petition within the limitations period may result in his petition being deemed time-barred." *See* Text Order dated May 18, 2001, Docket No. 12, *Concepcion v. Senkowski*, No. 00-CV-1014(WMS).

The petition in the instant proceeding was signed and dated March 7, 2007, by Concepcion, and that is the date it is deemed filed under the prisoner mailbox rule. As noted above, the one-year statute of limitations expired on February 28, 2001. Concepcion's first federal habeas proceeding was dismissed without prejudice on May 18, 2001. As Concepcion was informed at the time he voluntarily withdrew the first petition, the statute of limitations continued to run during the time that the first habeas petition was pending–that is, from December 5, 2000, until May 18, 2001. The Supreme Court clearly has held that the pendency of a federal habeas proceeding does not toll the statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *Duncan v. Walker*, 531 U.S. 991 (2001).

By the time Concepcion filed his second habeas petition on March 7, 2007, a little over six (6) years had passed since the one-year limitations expired on February 28, 2001.

Concepcion's second petition is untimely if the start-date used in Section 2244(d)(1)(A), unless he can show that he is entitled to statutory tolling under Section 2244(d)(2) or to "equitable tolling."

### 2. Tolling under Title 28, Section 2244(d)(2) is unavailable.

AEDPA's statutory language specifically contemplates tolling of the limitations period in only one circumstance-when the petitioner has spent time pursuing properly filed state post-conviction or other state collateral review proceedings. *See* 28 U.S.C. § 2244(d)(2). Title 28, § 2244(d)(2)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under" 28 U.S.C. § 2244(d)(1). 28 U.S.C. § 2244(d)(2). Thus, the statute allows the limitations period clock to be "stopped" while a prisoner is challenging his conviction or sentence in state court. The Court has reviewed the procedural history of Concepcion's filings in state court to see whether the expired one-year grace period was tolled by any properly filed applications for post-conviction or other collateral review.

As Respondent points out, although Concepcion filed several post-conviction motions in state court, he did not file the first one until June of 2001; however, the statute of limitations had expired about four months previously on February 28, 2001. A state-court post-conviction motion cannot restart a statute of limitations period that has already run *See Doe v. Menefee*, 391 F.3d 147, 154 (2d Cir. 2004) ("When the AEDPA limitations period expired on November 19, 1999, Wall had not yet filed the § 440 motion, thereby losing the opportunity to invoke 28 U.S.C. § 2244(d)(2)'s provision for tolling the limitations period during the pendency of a state

post-conviction motion."); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840 (2000). Since Section 2244(d)(2)'s tolling provision is not applicable here, Concepcion must avail himself of the doctrine of "equitable tolling" in order to excuse the untimely filing of the second petition.

### 3. Petitioner is not entitled to equitable tolling.

"Although AEDPA does not provide that its limitations period may be tolled for any reason other than the pendency of a state post-conviction motion, *see* 28 U.S.C. § 2244(d)(2), in 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period." *Doe v. Menefee*, 391 F.3d at 159 (quoting *Smith v. McGinnis*, 208 F.3d at 17 (internal quotation marks and citations omitted in original)). To qualify for equitable tolling, the petitioner must establish that "'extraordinary circumstances prevented him from filing his petition on time,' and that he 'acted with reasonable diligence throughout the period he seeks to toll.'" *Id.* (quoting *Smith,* 208 F.3d at 17). The Second Circuit has "established only a limited number of circumstances that may merit equitable tolling, such as where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary, *see Baldayaque* [*v. United States*], 338 F.3d [145], 152 [(2d Cir.2003)], and where prison officials intentionally obstruct a petitioner's ability to file his petition by confiscating his legal papers, *see Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir.2000)." *Doe*, 391 F.3d at 160.

Concepcion's papers could be read as arguing that he is entitled to equitable tolling because the attorney who represented him in connection with the first habeas petition misled him about whether that petition was still pending. This contention is belied by the record. The docket sheet for Case Number 00-CV-1014(WMS) indicates that Concepcion proceeded *pro se*;

furthermore, the docket indicates that notice of filing and a copy of the order dismissing the petition without prejudice was sent to the following individuals: "Loretta S. Courtney [Respondent's attorney], Roberto Concepcion." *See* Docket No. 12, *Concepcion v. Senkowski*, No. 00-CV-1014(WMS). Moreover, as Respondent points out, Concepcion indicated in a pleading filed in state court in June 2001 that his first habeas proceeding had been terminated. Respondent's Memorandum of Law at 6 (citing Petitioner's Affidavit in Support of 2001 C.P.L. § 440.10 Motion to Vacate, ¶15, attached as Appendix ("App.") T to Respondent's Answer ("Resp't Ans.").

As Respondent notes, Concepcion's pleadings are not entirely clear, but they could also be interpreted as alleging there exists newly discovered evidence of his actual innocence–an audiotape of a conversation between two witnesses purportedly demonstrating that one witness' testimony was coerced, and a recanting affidavit from one of the witnesses.

"Newly discovered evidence" of actual innocence is a circumstance which other habeas petitioners have argued warrants equitable tolling of AEDPA's statute of limitations. Whether the United States Constitution requires an "actual innocence" exception to the AEDPA one-year statute of limitations on federal habeas petitions is a novel question of constitutional law. No actual innocence exception to § 2244(d)(1) exists in the language of the statute itself, and the United States Supreme Court has not squarely ruled on the issue. Likewise, the Second Circuit noted in *Doe v. Menefee* that it had "reserved the question of whether a claim of actual innocence based on newly discovered evidence constitutes an extraordinary circumstance that merits equitable tolling, . . . as well as the question of whether the Constitution would require equitable tolling for actual innocence." 391 F.3d at 154 (citing *Lucidore v. New York State Div. of Parole*,

209 F.3d 107, 114 (2d Cir.2000)). The Second Circuit has not yet decided the question of whether "considerations of justice mandate adopting the actual innocence gateway as a means of tolling AEDPA's limitations period," *id*. at 161 (citing *Whitley v. Senkowski*, 317 F.3d 223, 225-26 (2d Cir. 2003), explaining that it should defer answering until presented with "a case in which the petitioner can show that, because he can demonstrate his actual innocence, he would be injured if not entitled to tolling on this basis[,]" *id.* (declining to decide the issue in because the petitioner had failed to adduce a credible claim of "actual innocence") (citing *Lucidore*, 209 F.3d at 113-14). Accordingly, the Second Circuit has instructed district courts faced with untimely petitions in which the petitioner asserts his actual innocence "to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence." *Id*. (citing *Whitley*, 317 F.3d at 225).

The "actual innocence" evidentiary standard articulated by the Supreme Court in *Schlup v. Delo*, 513 U.S. 298, 324 (1995), applies in the tolling context. *Doe v. Menefee*, 391 F.3d at 161 (citing *Lucidore,* 209 F.3d at 114 (applying *Schlup*'s standard and concluding that petitioner had not demonstrated "actual innocence")). As the Second Circuit explained, the Supreme Court in *Schlup* "carefully limited the type of evidence on which an actual innocence claim may be based and crafted a demanding standard that petitioners must meet in order to take advantage of the gateway," *id.*, inasmuch as v"[t]he petitioner must support his claim 'with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial[,]'" *id*. (quoting *Schlup*, 513 U.S. at

324).

Here, the purported "newly discovered evidence" that Concepcion is factually innocent is neither new nor demonstrative of actual innocence. The alleged new evidence is an audiotape recording of a conversation between two witnesses. However, defense counsel possessed both a copy of the audiotape and a transcript of it at the time of trial, which he used during his cross-examination of the witnesses. Resp't Mem. at 6 (citing Petitioner's Affidavit in Support of 2007 C.P.L. § 440.10 Motion to Vacate; Petitioner's Statement of Facts; Petitioner's Memorandum of Law at 3,4; and Petitioner's Exhibits B, D & E, attached as App. PP to Resp't Ans.). Furthermore, as Respondent points out, Concepcion acknowledged in one of his pleadings filed in this case that he had heard the audiotape when his attorney visited him at the prison. The audiotape of the witness conversation therefore cannot be considered "newly discovered" evidence for purposes of an actual-innocence tolling exception to AEDPA's statute of limitations (assuming that such an exception exists). *See*, *e.g.*, *United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000) (holding that affidavit from a new witness was not newly discovered evidence because trial counsel knew of the existence of the witness before trial; trial counsel with due diligence could have discovered the evidence); *Williams v. Phillips*, No. 04 Civ.4653 DAB AJP, 2005 WL 1806161, at *10 (S.D.N.Y. Aug. 2, 2005) (Report & Recommendation) (rejecting claim that petitioner was entitled to later start-date under 28 U.S.C. § 2244(d)(1)(D); where petitioner was aware of a cooperating witness' psychiatric and criminal history at the time of trial and counsel extensively witness on those subjects, and knew that the witness had received over $3,000 in relocation expenses from the District Attorney's Office, even if he did not know the actual amount allegedly was $10,000; under those circumstances, affidavits from the witness'

family members regarding his drug abuse, mental health issues, and arrest record were not "newly discovered evidence" and, "'[a]t best, would have afforded defense counsel additional grounds on which to impeach prosecution witnesses whose credibility had already been vigorously challenged . . . .'") (quoting *United States v. Canova*, 412 F.3d 331, 348-49 (2d Cir. 2005)); *Burnie v. Duncan*, No. 99-CV-350 (JG), 2003 WL 22670913, *5 (E.D.N.Y. Nov. 3, 2003) ("In any event, Burnie knew of this evidence [i.e., an affidavit from an alleged alibi witness] as of February 8, 2000 and yet filed his habeas petition based on this claim (for the first time) on July 26, 2002–well after the one-year limitations period under § 2244(d)(1)(D) had expired. Thus, I dismiss this claim as time-barred as well.").

To the extent that Concepcion is claiming that the "newly discovered evidence" of actual innocence is contained within the alleged recantation by witness Robert Black, I note that Black's affidavit was not presented to the trial court until 2001–four years after Black allegedly recanted his testimony in 1997. *Cf. Pacheco v. Artuz*, 193 F. Supp.2d 756, 761 (S.D.N.Y. 2000) (finding that the petitioner, through the exercise of due diligence, could not have obtained evidence that the witness was lying until witness actually recanted, even though petitioner could have contacted the witness prior to such admission). As Respondent argues, Concepcion cannot establish that he pursued his claim based on Black's alleged recantation with reasonable diligence given the four-year delay between Black's alleged recantation and Concepcion's motion to vacate the judgment based upon that affidavit. Black's recantation furthermore is not "reliable evidence" of Concepcion's innocence as contemplated by *Schlup*. Tellingly, it first surfaced after Black had received a modification to his prison sentence following a successful C.P.L. § 440.20 motion and had served out his prison time. As the prosecution stated, it is

suspicious that Black's "recantation" came at a time when he had already received the benefit from testifying against Tirado and Concepcion and had nothing to lose. Black's sister, Rahnisha Mackey, who also testified against Concepcion, did not similarly recant her testimony, despite the attempts by Concepcion's attorney to have her sign an affidavit for that purpose.

### B. Petitioner is not entitled to the later start-date set forth in Section 2244(d)(1)(D).

Even if Concepcion were entitled to have the one-year statute of limitations start on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence[,]" 28 U.S.C. § 2244(d)(1)(D), that would not assist him. This is because the start-date under Section 2244(d)(1)(D) would be earlier than the date on which his conviction became final: Black signed his recanting affidavit in 1997, while Concepcion's conviction did not become final until 1999.

### III. Conclusion

Roberto Concepcion's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is untimely, and the circumstances do not warrant equitable tolling of the statute of limitations. Therefore, the petition is dismissed as time-barred. In light of this disposition of the petition, Concepcion's motion to hold the petition in abeyance and motion for discovery and an evidentiary hearing are denied as moot. Because Concepcion has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: May 4, 2011
Buffalo, New York